UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

FRANCISCO RODRIGUEZ ROMERO,
ET AL.

VERSUS

SCOTT LADWIG, ET AL.

CIVIL ACTION

NO. 25-1106-JWD-EWD

## RULING AND ORDER

I.  BACKGROUND

Before the Court are Petitioner Ibrahim Mohammed's *Emergency Motion to Enforce Order Granting Habeas Corpus Petition and Compel Release* ("*Motion to Enforce*") (Doc. 31) and *Emergency Motion for a Temporary Restraining Order* ("*Motion for Temporary Restraining Order*") (Doc. 34). Yesterday, Petitioner's counsel learned that Mr. Mohammed had been re-detained by ICE, allegedly without the due process protections required by this Court's order granting habeas relief. (Doc. 31 at 1.) The *Motion to Enforce* asks that the Court enforce its previous order (Doc. 28) and order Mr. Mohammed's release. Around noon today, Petitioner's counsel learned that Mr. Mohammed was "on his way to the airport" for potential removal. (Doc. 34 at 1 (quoting Doc. 34-2 at 2).) And so, the *Motion for Temporary Restraining Order* asks that the Court prevent Mr. Mohammed's removal in order to maintain the status quo while the Court makes a determination on the *Motion to Enforce*.

In light of the above, the Court held an impromptu status conference to discuss the current state of events, how Mr. Mohammed came to be detained, where he is currently located, and counsel's efforts to communicate with him. Petitioner's counsel also reminded the Court that Mr. Mohammed cannot be removed to his home country of Ethiopia by protection of the Convention

Against Torture ("CAT"). Respondents' counsel informed the Court—and Petitioner's counsel, who had not yet received this information—that Mr. Mohammed is to be removed to Eswatini.

**II.    JURISDICTION**

During the status conference, Respondents' counsel asserted the Court's lack of jurisdiction over removals, per the jurisdiction-stripping provision of 8 U.S.C. § 1252(g). Specifically, the government contends that 8 U.S.C. § 1252(g) bars the Court's jurisdiction to review Mr. Mohammed's removal to a third country to which he has likely never been—Eswatini. Section 1252(g) of the Illegal Immigration Reform and Immigration Responsibility Act ("IIRIRA") states:

> Except as provided in this section and notwithstanding any other provision of law . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g). Despite the government's contention that § 1252(g) would preclude jurisdiction in this matter, that position is inconsistent with the Supreme Court's narrow interpretation of the provision, *see Reno v. American-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 487 (1999) ("Our narrow reading of § 1252(g) makes sense of the statutory scheme as a whole . . . ."), as well as Fifth Circuit precedent.

In *Duarte v. Mayorkas* the Fifth Circuit acknowledged that it has:

> "[L]ong recognized that [8 U.S.C. § 1252(g)] is designed to protect the *discretionary decisions* of immigration authorities in matters related to removal and deportation."

*Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022) (emphasis added); *Kewayfati v. Bondi*, 165 F.4th 342, 347 n.10 (5th Cir. 2026) (same). And in *Texas v. United States*, the Fifth Circuit relied on Supreme Court precedent "emphasiz[ing] that § 1252(g) is not a general jurisdictional limitation, but rather applies only to three discrete actions." *Texas v. United States*, 809 F.3d 134,

164 (5th Cir. 2015) (cleaned up); *see also Alvidres-Reyes v. Reno*, 180 F.3d 199, 201 (5th Cir. 1999) ("The Congressional aim of § 1252(g) is to protect from judicial intervention the Attorney General's long-established discretion to decide whether and when to prosecute or adjudicate removal proceedings or to execute removal orders."); *Martinez v. Rice*, No. 25-1780, 2025 WL 3554620, at *2 (W.D. La. Dec. 11, 2025) (same).

Just five years after *Foster v. Townsley*, 243 F.3d 210 (5th Cir. 2001), the Fifth Circuit "squarely" considered whether § 1252(g) precluded jurisdiction over a constitutional challenge to removal in *Flores-Ledezma v. Gonzales*. The court left no doubt:

> Squarely addressing this issue for the first time, we conclude that [§ 1252(g)] does not preclude us from considering Flores's challenge to his removal order on constitutional grounds.

*Flores-Ledezma v. Gonzales*, 415 F.3d 375, 380 (5th Cir. 2005) (§ 1252(g) did not preclude jurisdiction over noncitizen's equal protection challenge to AG's commencement of removal (citing with approval *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) (§ 1252(g) "is to be construed narrowly and does not preclude the court from ruling on constitutional challenges to deportation procedures"), and *Chapinski v. Ziglar*, 278 F.3d 718, 721 (7th Cir. 2002) (§ 1252(g) does not bar consideration of "a substantial constitutional issue or bizarre miscarriage of justice"))).

Lower courts within the Fifth Circuit have likewise found that, despite limiting "judicial review in [three] [specific] areas," § 1252(g) "has not prevented courts from ruling on constitutional claims arising in the deportation context." *Maria S. v. Garza*, No. 13-108, 2015 WL 4394745, at *3 (S.D. Tex. July 15, 2015); *see also Hernandez-Fernandez v. Lyons*, No. 25-773, 2025 WL 2976923, at *3 (W.D. Tex. Oct. 21, 2025) ("Hernandez-Fernandez is enforcing his constitutional right to due process in the context of the removal proceedings . . . . Such claims are

3

not barred by § 1252(g)."); *Garcia v. U.S. Citizenship & Immigr. Servs.*, No. 21-2233, 2022 WL 3349151, at *13 n.9 (N.D. Tex. Aug. 12, 2022) (The court would have "subject matter jurisdiction over Plaintiff's Fifth Amendment due process claim because it involves a question arising under the United States Constitution."); *Guerra Leon v. Noem*, No. 25-1495, 2025 WL 4113562, at *2 (W.D. La. Oct. 30, 2025) (granting TRO for non-citizen with a final order of removal *in absentia* and finding: "Petitioner is enforcing his constitutional right to due process in the context of the removal proceedings . . . . Therefore, § 1252(g) does not limit the Court's jurisdiction in the present case.").

Section 1252(g) prohibits claims based on the exercise of "prosecutorial discretion," *AADC*, 525 U.S. at 489, "but it is not within the 'discretion' of the Executive to exceed the scope of its authority or otherwise violate the law." *D.V.D. v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ----, 2026 WL 521557, at *10 (D. Mass. Feb. 25, 2026). The INS and the Constitution require notice of the country of deportation—and for obvious reasons. *See Id.*; *Kossov v. I.N.S.*, 132 F.3d 405, 408 (7th Cir. 1998) ("fundamental failure of due process" not to give sufficient notice of country of removal); *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999) (agreeing "that the last minute designation of Armenia as a country of deportation violated due process and that [petitioner] [wa]s entitled to a remand in order to present additional evidence of the persecution that he would face if deported to that country").

Under these circumstances, given the lack of due process afforded to Mr. Mohammed, the Court finds that § 1252(g) does not preclude jurisdiction. *See Ibarra-Perez v. United States*, 154 F.4th 989, 997 (9th Cir. 2025) (holding that claim based on third-country removal without notice "raise[d] purely legal arguments in challenging [the] removal," including whether the plaintiff

"had a right to meaningful notice and an opportunity to present a fear-based claim," and thus that the action was not barred by § 1252(g)).

### III. ANALYSIS

To succeed on a motion for temporary restraining order, the movant must establish four elements: (1) a substantial likelihood that the movant will prevail on the merits; (2) a substantial threat that irreparable harm will result if the injunction is not granted; (3) the threatened injury outweighs the threatened harm to the defendant; and (4) the injunction will not disserve the public interest. *Clark v. Prichard*, 812 F.2d 991, 993 (5th Cir. 1987) (citation omitted). Elements three and four merge "when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435–36 (2009).

Here, the merits at issue are the *Motion to Enforce*—whether Mr. Mohammed was re-detained in accordance with due process. By his counsel's representation, after this Court granted habeas relief, Mr. Mohammed returned to Maryland, where he had missed several appointments with his probation officer and was therefore held in criminal custody on March 2, 2026. (Doc. 31-1 at 2.) Mr. Mohammed was later ordered released by a Maryland judge, but was instead transferred to the custody of another facility. (*Id.*) Yesterday, March 9, 2026, Mr. Mohammed notified his counsel that he was in ICE custody via a phone call that was cut off after only 20 seconds. (*Id.*) His counsel was unable to reach him again and spoke with several ICE officers, who were unable to tell counsel where Mr. Mohammed was or whether or to where he was being deported. (Doc. 34-2 at 2–3.) Nevertheless, as of 12:05 p.m. CST today, Mr. Mohammed was "on his way to the airport." (Doc. 34-1 at 1 (quoting Doc. 34-2 at 2).)

The government informed the Court during today's emergency hearing that Mr. Mohammed was served with a Notice of Revocation of Release on March 10, 2026, that also

5

informed him that he would be removed to a third country—Eswatini. Mr. Mohammed is apparently en route to the airport, if not already at the airport for removal to Eswatini, as was explained by counsel for both parties today. There is no indication, however, that Mr. Mohammed was given sufficient notice or his removal to Eswatini, or an opportunity to raise any objections or fear-based claims prior to his removal to this third country. *See, e.g.*, *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 367 (D. Mass. 2025) (discussing third-country removals). The Court was also made aware by Mr. Mohammed's counsel that they have been unable to speak with their client since learning of his impending removal to a third country, despite their best efforts to reach him.

      Given the admittedly sparse facts above, the Court sees no evidence of the process afforded to Mr. Mohammed in his current re-detention and rapid removal to Eswatini without notice. The Court has addressed the balance of harms in its previous order, (Doc. 28), and adds that if process due to Mr. Mohammed by reason of his CAT protection status is not upheld, there is a risk that he will be deported to a country where he will be persecuted or tortured. Because of the highly abbreviated timeline and the parties' representations of the events leading up to filing the *Motion for Temporary Restraining Order*, the Court told the parties at the status conference of its intention to **grant the *Motion for Temporary Restraining Order***, enjoining the government from removing Mr. Mohammed from the country for a period of five (5) days in order to give the Court time to consider all of the arguments before it. Now, that intention is committed to writing.

IV.    **CONCLUSION**

Accordingly,

**IT IS ORDERED** that the *Emergency Motion for a Temporary Restraining Order* (Doc. 34) is **GRANTED**. The government shall not remove Mr. Mohammed from the United States for a period for **five (5) days**.

**IT IS FURTHER ORDERED** that, by March 12, 2026, the parties shall enter simultaneous briefs addressing the due process afforded Mr. Mohammed on his re-detention. Briefs shall address the process due at revocation of his order of supervised release, including whether an informal interview took place, where, when, with whom, and whether Mr. Mohammed was allowed access to his counsel. Briefs shall also address the process due to a noncitizen prior to removal to a third country, and if and how that standard is different for a noncitizen with CAT protection. Finally, briefs should address the current status and whereabouts of Mr. Mohammed.

**IT IS FURTHER ORDERED** that the government shall arrange for Mr. Mohammed to be able to contact his counsel for a legal call, and to be given the time and privacy to do so meaningfully.

**IT IS FURTHER ORDERED** that the Government's Wednesday, March 11, 2026, response deadline is **VACATED**; the status conference for later that day is **CANCELED**; and Government's Motion for Clarification (Doc. 35) is **DENIED AS MOOT.**

Signed in Baton Rouge, Louisiana, on <u>March 10, 2026</u>.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**